UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN STERLING,

      Plaintiff,

vs.                                  CIVIL NO.: 04-CV-72288-DT

COMMISSIONER OF              HON. GEORGE CARAM STEEH
SOCIAL SECURITY,               MAG. JUDGE WALLACE CAPEL, JR.

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits on May 24, 2001, alleging that he has been disabled and unable to work since January 11, 2001, due to high blood pressure, heart problems, seizures, stroke, kidney problems, and depression. (TR 48-50, 61). The Social Security Administration [SSA] denied benefits initially on August 29, 2001. (TR 31-35). A de novo hearing was held on June 16, 2003, before Administrative Law Judge [ALJ] Douglas N. Jones. (TR 567-606). In a decision dated September 12, 2003, the ALJ denied Plaintiff benefits. (TR 15-26). The ALJ found that Plaintiff retains the residual functional capacity [RFC] to perform a limited range of sedentary work. (TR 24, 25). The ALJ further found that Plaintiff is not disabled

within the meaning of the Social Security Act as amended. The Appeals Council denied Plaintiff's request to review the decision on May 4, 2004. (TR 6-9). Plaintiff has commenced this action for judicial review.

### A.    PLAINTIFF'S TESTIMONY

Plaintiff testified that he was born September 23, 1955. (TR 572). He stated that he lives at his mother's house in Flint. (TR 571). He explained that he lives there with her and his eleven-year-old nephew six days a week, but also owns a home at 207 East Patterson, and goes there about once a week. (TR 570-72, 587). He stated that his nephew goes to school and his mother is retired. (TR 572).

Plaintiff stated that he finished high school in 1977 and received his diploma at that time. Id. He reported that he is six feet tall and weighs about two hundred and fifty-five pounds. Id. He stated that he is right-handed and currently on total disability. Id. He stated that he last worked in 1998 or 1999 at Delphi. (TR 572-73). He testified that he has not worked since January 2001 and does not, nor has he ever received worker's compensation benefits. (TR 573). He testified that he did file for worker's compensation at one time, but it is no longer pending to his knowledge. (TR 573-74). He stated that he receives a pension in the amount of one thousand, seven hundred, and one dollars along with health insurance. (TR 573-74). He reported that he has not been involved with a vocational rehabilitation organization. (TR 574).

Plaintiff testified that he has a valid driver's license and it is valid until 2004. (TR 574-75). He stated that he thought he last renewed it in 2000. (TR 575). He reported that he only drives once or twice a week due to his vision. (TR 575, 585). He also reported seeing black spots. (TR 586). He explained that he had a seizure a year or two before the hearing and now he has his mother do

most of the driving for him. (TR 575). He explained that he has not been on any vacations in the last two years. Id. He explained that his aunt died about a year or two ago and he went with his mother down to Spring Hill, Louisiana for the funeral, but she did all the driving. (TR 575-76).

Plaintiff testified that he was out of work for the first time in January 1998 and tried to go back in May of 1998, but he was still sick and they would not hire him again. (TR 576). He had trouble remembering when he went back and forth to work. (TR 577). He reported that he was a packer, which required him to push and pull in excess of one hundred pounds at times. (TR 578). He also reported lifting about forty pounds regularly at that position. Id. He stated that he was on his feet six to eight hours a day, bending and lifting off a conveyer. (TR 578-79). He explained that he later worked on a fuel pump job after he tried to come back to work. (TR 579). He stated that it only required lifting up to ten pounds and assembling parts on a line. Id. He reported that he could not handle the job because it went too fast and required him to work with parts that were too little. Id. He stated that he only had three days to learn the job and he is a very nervous person. (TR 579-80).

He explained that one day he got sick at work and went to the hospital and then later to the company doctor. (TR 580). He stated that he then started seeing Dr. Hartman and in May 2001, both his doctor and the company doctor filled out his disability pension application. Id. He stated that he did not believe that he could continue to work and that he has been sick a lot since 1998. Id. Plaintiff stated that neither of the aforementioned doctors returned him to work. (TR 581). However, he stated that Dr. Freeman, the worker's compensation doctor, did say that he might be able to go back to some sort of sedentary work. Id.

Plaintiff testified that he has trouble sitting because he gets tense and jittery, and explained that if he did work he would need to move around "a little bit." Id. He stated that standing in one place is "too confined," and that his feet start hurting if he stands in one place too long and his legs swell sometimes. (TR 581-82). He stated that he can stand an hour or two before he would have problems. Id. He stated that when his legs swell, which is usually the day after he stands for too long, he will lay down or elevate his legs. (TR 582). If this does not relieve the swelling, he reported that he goes to the emergency room and gets medication to take the swelling down. Id. He testified that he saw Dr. Blisar in 1999 and 2000 for the swelling in his legs. (TR 592).

He stated that he walks when he feels well and he used to walk two or three blocks a day, but has not been able to lately due to lack of energy. (TR 582-83). He stated that he does not lift or squat often. (TR 583). He stated that he could pick up coins off a table, but not if he had to do it fast or if someone was yelling at him to do it. Id. He explained that he has been nervous ever since he was involved in an automobile accident and cannot work in tense environments. (TR 583, 586). He stated that he is currently treating with mental health facilities and has been for some years for his depression and anxiety. (TR 583-84).

He stated that he used to see Dr. Ford at the Insight Clinic, but he passed away in January 2001. (TR 591). He then saw Mr. Tidwell for a little while, but has not been back for about one year. (TR 591-92). He stated that Mr. Tidwell is just a friend of his and he did not prescribe him any medication. (TR 592). He stated that he also went to therapy in 2000 at the Hillsdale Clinic. Id.

He stated that he lays around his house all day and takes medication, about eleven or twelve pills each day. (TR 584). Plaintiff reported that he has good and bad days; usually he has good days

when he takes his medication. (TR 584-85). He stated that his medication causes him to sleep a lot and gain weight, about one hundred pounds. (TR 587, 589). He stated that eats and sits on his mother's porch or he might read a book once in a while. (TR 587, 589-90). He stated that he can read "some." (TR 591). He also reported that he watches television and goes to Bob Evans with his mother on occasion. (TR 589-90). He stated that he goes to church on some Sundays and wants to start walking at the mall, but is afraid to go alone. (TR 590). He stated that he does not have a social life and has no desire for same. Id.

He stated that in 1998, he had two stents put in his heart because he had a heart attack. (TR 585). Since then, he reported that he has had a stroke and seizure. Id. He explained that he had the seizure January 2001 and was treated at McLaren. Id. He stated that he is not sure if he has had any more seizures, but he did report having nightmares. Id. He stated that he tries to keep his blood pressure under control and monitors it at home twice a week. (TR 591).

Plaintiff reported that he has kidney problems and uses the "bathroom like a racehorse all night long." (TR 586). He stated that he goes to the bathroom "two or three times within an hour." Id. He stated that his mother takes care of him and does all the cooking and cleaning. Id. He also has someone cut his lawn for him. (TR 586-87). He stated that he used to fish, but now he has problems going by himself. (TR 587). He explained that he went fishing a week prior to the hearing, but he had someone go with him. Id. He stated that he did not fish at all in the year prior. Id.

Plaintiff testified that he has not used "drugs" in the last ten years. (TR 587-88). He explained that he went through rehabilitation and stopped using "drugs" when he was thirty years old. (TR 588). When asked to explain why blood work tested positive for cocaine, Plaintiff stated

that he cannot explain it because he has not used "drugs." (TR 588-89). He stated it might have been positive because he used some Nyquil. (TR 588). He stated that he has not drank alcohol in a number of years. (TR 589).

Plaintiff testified that he does not think that he could go back to work full-time, even if he had a sit or stand option, was able to work at his own pace, and did not have to lift up to ten pounds because of his nervous condition. (TR 590-91).

### B. MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[1]

### C. VOCATIONAL EXPERT'S TESTIMONY

Melody Henry, a vocational expert [VE], also testified at the hearing. (TR 593-605). She classified Plaintiff's past work as a packer as medium to heavy and unskilled and as a fuel pump assembler as light and unskilled. (TR 595). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education and work experience could perform work with the following restrictions:

> light work that involved no climbing of ladders, no climbing of stairs and only occasional - - well, excuse me, occasional climbing of stairs. And only occasional exposure to hazardous machinery or unprotected heights involved no detailed instructions and no extended periods of concentration. By extended periods, I mean no more than 10 minutes would be required to actively mentally to - - for act of mental processing of a task. But there could be many tasks to do during the day. And no fast paced work or what I guess would be best decide [sic] - - unusually fast paced work such as work that might involve keeping up with an assembly line or that was based entirely on production quotas that were meant to be challenging and fast

---

[1] See Subpart E, supra.

>as opposed to the idea that it would nice if you could finish acts during the course of a workday. And that involved only occasional interaction with members of the general public and occasional changes in a work setting or procedure.

(TR 595-96). The VE testified that the claimant would not be able to return to any of his past relevant work because of the exertional level of the packer position, "[t]he fast paced work, assembly line work," and the "need to meet production quotas and the exposure to hazardous machinery would . . . preclude both past work." (TR 596-97). The ALJ asked whether there would be other unskilled work that Plaintiff is capable of performing. (TR 597). The VE identified the following light jobs: night janitor, 6,960 positions; stock clerk, 2,685 positions; file clerk, 1,725 positions; recording clerk, 1,070 positions; and office machine operator, 1,110 positions. Id.

The ALJ asked a second hypothetical that assumed "that the person was limited to sedentary work and needed the ability to sit and stand at - - if they wish to do so at intervals of 30 minutes. And had the same other limitations that we've previously mentioned." (TR 597-98). The VE testified that such a claimant would still be capable of sedentary and unskilled work positions, including the following: general office clerk, 9,475 positions; record clerk, 1,035 positions; visual surveillance monitor, 1,250 positions; and counting clerk, 2,410 positions. (TR 598). The ALJ then inquired whether an additional two bathroom breaks, other than during the normal coffee break and lunch break, lasting less than five minutes, would affect the sedentary positions. Id. The VE stated that such a limitation would not impact the positions listed in response to either the first or second hypothetical. Id.

Plaintiff's counsel then questioned the VE. (TR 599-600). Plaintiff's counsel asked the VE at what point bathroom breaks would interfere with the jobs listed. (TR 599). The VE testified that

> [i]f you're taking greater than one or two per hour, which equate to greater than about five to ten minutes out of the workday or if you're on a production quota or assembly line position where it impacts your ability to meet your production quota. Or if you are the individual at a receptionist desk or front desk where it's your responsibility to cover the floor on a sales floor. But those are the types of situations where it's - - additional bathroom breaks may be an issue.

Id.  The VE summarized that bathroom breaks that do not "exceed about 10 minutes per hour is typically acceptable for unskilled, provided you're not in one of those situations that I described."

Id.

> Plaintiff's counsel presented
>
> a hypothetical worker with the age, education and past work history as this gentlemen [sic] has, assume the factors that the Judge gave you. Assume further, relative to the first hypothetical that such a hypothetical worker would be due to pain medicine and the affects - - or not pain medicine, but the medication that he's taking would be subject to side affects [sic] of fatigue, drowsiness causing him to sleep a couple of hours per day, which would also cause moderate deficiencies in concentration, persistence and pace, which would result in failure to complete assigned tasks in a timely manner, would such a hypothetical worker be able to perform any of the jobs you've listed?

(TR 600).  The VE responded that "[t]he moderate deficiencies in concentration, persistence and pace, to the extent that the person couldn't complete assigned task" would preclude the unskilled positions.  Id.  Further, the need to sleep a couple of hours a day would also preclude the unskilled positions if they could not be accommodated through the lunch or coffee breaks.  Id.  The ALJ stopped Plaintiff's counsel from questioning the VE as to credibility and interpretation of the medical evidence. (TR 600-03). Plaintiff's counsel then asked whether the need to elevate both legs above waist level while laying down for two hours a day as well as medication that causes drowsiness and the need to rest would preclude work.  (TR 604-05).  The VE testified that the limitation regarding elevation of the feet would preclude even the sedentary positions.  (TR 605).

8

Further, the VE testified that the need to be absent from a work station more than ten minutes each hour would eliminate the unskilled occupations.  Id.

### D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "impairments best described as:  coronary artery disease, status post angioplasty and stent placement (1997, 1998); hypertension with a history hypertensive nephrosclerosis and hypertensive encephalopathy; diabetes mellitus; asthma, obesity; seizure disorder; major depression; anxiety disorder; and alcohol abuse (in recent remission)."  (TR 21).  However, the ALJ determined that he did not have an impairment, either alone or in combination, which meets or equals in severity any Listed Impairment found in 20 C.F.R. Section 404, Subpart P, Appendix 1, of Regulation No. 4.  (TR 21, 25).  The ALJ found Plaintiff's testimony not fully credible.  (TR 23, 25).  He determined that Plaintiff had the residual functional capacity [RFC] to perform

> sedentary work . . . that permits the opportunity to alternate between sitting and standing at 30-minute intervals, permits two bathroom breaks each day in addition to other scheduled breaks, and involves no climbing ladders, only occasional climbing of stairs, occasional exposure to unprotected heights or hazardous machinery, no detailed instructions, no extended periods of concentration, no fast-paced work, only occasional interaction with the general public, and only occasional changes in work setting or procedures.

(TR 25).  Thus, the ALJ concluded that Plaintiff is not disabled.  (TR 26).

### E. ANALYSIS

Plaintiff advances one main claim in his Motion for Summary Judgment.  Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because the ALJ's hypothetical did not accurately portray Plaintiff's impairments.  Specifically, Plaintiff alleges that

9

the ALJ failed to consider his need for frequent bathroom breaks, difficulty with concentration, persistence and pace, and the need to lie down throughout the day.[2] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence and further, that Plaintiff offers additional evidence that this Court may not review.[3] The matter is now ready for decision.

### 1.     **Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

---

[2] Plaintiff's Motion for Summary Judgment and Brief filed April 15, 2005 (hereinafter "Plaintiff's Brief"), at pages 11-14. Plaintiff reiterates his claims in a Response to Defendant's Motion for Summary Judgment filed August 17, 2005 (hereinafter "Plaintiff's Response").

[3] Defendant's Motion for Summary Judgment and Brief filed August 4, 2005 (hereinafter "Defendant's Brief"), at pages 9-19.

### a. Improper Hypothetical

Plaintiff argues that the ALJ's RFC hypothetical failed to include limitations regarding the need for frequent bathroom breaks, difficulty with concentration, persistence and pace, and the need to lie down throughout the day.[4]

Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 2004 WL 1102929, *4 (6th Cir. 2004). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted).

Although, the VE responded to Plaintiff's counsel's hypothetical, testifying that such a claimant would not be able to sustain any work activity under the limitations regarding the need to lie down for extended periods, the ALJ is not bound by that response. As in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine

---

[4]Plaintiff's Brief at pages 4, 11-14.

11

> whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

The ALJ did not find the present Plaintiff fully credible; therefore, he need not include any limitations that he did find credible. Casey, 987 F.2d at 1235. Plaintiff does not challenge the ALJ's credibility finding. Nonetheless, the Court will examine the allegedly omitted limitations below.

### i.     Bathroom Breaks

Plaintiff's counsel mischaracterized the hypothetical as it relates to bathroom breaks.[5] First, the ALJ did include the need for an additional two bathroom breaks, other than during a coffee break or lunch break, in his hypothetical regarding the sedentary positions. (TR 598). Second, Plaintiff's counsel questioned the VE on the frequency of an acceptable number of bathroom breaks. (TR 599-600). The VE's testimony, contrary to Plaintiff's assertions, was that one could maintain employment in unskilled jobs, except for possible production quota positions, receptionists, and sale clerks, so long as the bathroom breaks did not exceed ten minutes each hour. (TR 599).

In February 2001, Plaintiff's renal failure was evaluated by kidney and hypertension specialist, Jagdish Mirchandani, M.D. (TR 314-15, 317). He was diagnosed with "[a]cute renal failure, which is resolving," as well as "[c]hronic renal failure most likely due to hypertensive nephroscelerosis." (TR 315).

Furthermore, there is no evidence that the Plaintiff needed such bathroom breaks because the record reflects, as noted in the ALJ's decision, that his chronic renal failure was noted as resolved in June 2001 and improved in September 2002. (TR 21, 559, 563). Additionally, the

---

[5]Plaintiff's Brief at pages 12-13.

record reflects that his chronic renal failure was stable in May 2001. (TR 271). Furthermore, no polyuria[6] was noted in the emergency room record on January 2, 2001 (TR 195), although later that month, on January 19, 2001, Plaintiff was reporting same in his history to the emergency room staff. (TR 229, 231). However, upon examination of the same date, January 19, emergency admission noted that "[t]here is no polyuria."[7] (TR 231).

Therefore, given the medical record, which does not support a need to go to the bathroom as often as suggested by Plaintiff, and noting further, that the ALJ did give a limitation regarding same in his hypothetical, there is no error. The ALJ made a decision based on substantial evidence.

### ii.     Concentration, Persistence and Pace

Next, Plaintiff argues that he is mentally unfit to maintain employment.[8] Specifically, he alleges that major depression, a GAF score of 55, and difficulty with concentration, persistence and pace render him unemployable. However, the ALJ's hypothetical stated the following limitations regarding same:

> no detailed instructions and no extended periods of concentration. By extended periods, I mean no more than 10 minutes would be required to actively mentally to - - for act of mental processing of a task. But there could be many tasks to do during the day. And no fast paced work or what I guess would be best decide [sic] - - unusually fast paced work such as work that might involve keeping up with an assembly line or that was based entirely on production quotas that were meant to be

---

[6] Polyuria is "[e]xcessive urination; the passage of abnormally large amounts of urine." See J.E. Schmidt, M.D., 4 Attorneys' Dictionary of Medicine, P-351 (2003).

[7] It is noted that Defendant discusses medical records reflecting no urinary complaints. Defendant's Brief at page 15. However, as Plaintiff points out, most of the records deal with no complaints of pain or blood when urinating. Plaintiff's Response at page "2." Nonetheless, because the records reveal no polyuria and resolved renal failure, Plaintiff's claim still fails.

[8] Plaintiff's Brief at page 13.

> challenging and fast as opposed to the idea that it would nice if you could finish acts during the course of a workday. And that involved only occasional interaction with members of the general public and occasional changes in a work setting or procedure.

(TR 596). Plaintiff fails to explain how these limitations neglect to account for the Plaintiff's limitations. Rather, Plaintiff merely argues that he is unable to complete work in a timely manner and had difficulty filling out forms and that this was observed by the SAA, that he is thus, disabled.[9]

Plaintiff argues that the GAF score of 55 shows "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning ( e.g., few friends, conflicts with peers or co-workers.) (DSM-IV)."[10] However, the treatment notes by Plaintiff's treating physician, Donald, J. Hartman, in the record reflect that in 2001 and 2002, there was no anxiety or depression. (TR 560, 561, 562, 563). Nonetheless, the ALJ included anxiety and depression in his list of impairments, but found that they were not severe. The ALJ also included limitations regarding contact with the general public in his hypothetical and restrictions on fast paced work in his hypothetical as well as limitations on detailed instructions and concentration. (TR 596). Therefore, there is no error.

### iii. Need to Lie Down

Lastly, Plaintiff simply states that the ALJ failed to include a limitation regarding his need to lie down during the day due to swollen feet caused by congestive heart failure.[11] Plaintiff makes no argument regarding same. "Issues adverted to in a perfunctory manner, unaccompanied by some

---

[9]Plaintiff's Brief at page 13.

[10]Plaintiff's Brief at page 13.

[11]Plaintiff's Brief at pages 11, 14. Plaintiff's Response at page "3."

effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to....put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Although, Plaintiff has waived any argument regarding same, the court notes that the record is replete with treatment notes indicating no edema in the extremities or stable edema in 2001, 2002, and even in April 2003.[12] (TR 271, 272, 274, 276, 278, 280, 282, 284, 287, 289, 293, 558, 559, 560, 561, 562, 563).

### b. Additional Evidence

Defendant points out that Plaintiff mentions his subsequent award of benefits.[13] The award of benefits and its accompanying decision is not before this Court, although Plaintiff attaches some documents regarding same to his brief. This constitutes additional evidence as Defendant argues.

The Sixth Circuit has held that the Court does not have to review new evidence unless good cause has been shown and the new evidence is material. Cline v. Comm'r of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996). In Cline, it was the claimant's

> primary argument [] that because the Appeals Council considered his new psychiatric evidence, the district court was required to do so as well. He is mistaken. In Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993), this court decided a case very much like Cline's, holding that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. Id. at 696.

---

[12]There was some trace edema in early 2001. (TR 295, 298, 300).

[13]Defendant's Brief at pages 17-19.

Id. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988) (citing Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir.1980)).

Additionally, Plaintiff has to establish "newness" pursuant to Finkelstein v. Sullivan, 496 U.S. 617, 626 (1990) (a sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding"); Abbott v. Sullivan, 905 F.2d 918, 925 n.5 (6th Cir. 1990).

Plaintiff has not shown any of the above, and further, he states that he is not offering same as new evidence.[14] Therefore, any discussion in Plaintiff's Brief regarding the new decision and award of benefits has not been part of the undersigned's analysis.

## III. CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **DENY**

---

[14]Plaintiff's Response at page "1."

16

Plaintiff's Motion for Summary judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                s/Wallace Capel, Jr.
                **WALLACE CAPEL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**

Dated:  September 26, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

James A. Brunson, Assistant United States Attorney, 101 First Street, Suite 200, Bay City, Michigan 48708,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Robert J. MacDonald, Suite 200 Patterson Building, Flint, Michigan 48502, and the Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov